## 15228.  REDD & CO. *v.* LATHEM & SONS.

1. Where a disinterested witness, who is in no way discredited by other evidence or his own, testifies from his own knowledge to a fact which is not in itself improbable or in conflict with other evidence, the witness is to be believed, and the fact testified to is to be taken as legally established. But this does not mean that the jury is bound in every case to accept evidence as true although it is not contradicted by direct evidence. It may be inherently subject to discredit, or so from the circumstances. While in this action of trover, in which a verdict was found for the defendants, two witnesses, whose evidence was not directly contradicted or otherwise affirmatively attacked, testified that the property had been pledged to the defendants by the owner as security for an indebtedness prior to an alleged purchase of the same by the plaintiffs, yet the testimony of neither was so certain, clear, and consistent as to establish the fact of the pledge as a matter of law.

2. In the absence of any consent or agreement, either express or implied, on the part of the husband, that the earnings of the wife shall be retained by her as her separate estate, they belong to him.

(*a*) A married woman may become a member of a partnership with her husband, and thus become bound jointly and severally with him for the partnership debts.

(*b*) A partner cannot sell partnership assets in payment of his or her individual debt, but may do so in payment of an existing debt of the firm, or may pledge the same to secure such firm debt.

(*c*) As to the ownership of the property in dispute in this case as it existed prior to the origination of the respective claims of the plaintiffs and the defendants, the evidence did not authorize the conclusion (1) that it was the sole property of a feme covert, but would have warranted a finding either (2) that it belonged solely to her husband, or (3) that it was the property of the husband and the wife as partners.

The inference was authorized also that such husband and wife were indebted as partners both to the plaintiffs and to the defendants. The verdict found for the defendants was supported upon any one of the following theories: (1) a pledge of the property to them by the husband individually and as sole owner; (2) a pledge by either the husband or the wife as member of a partnership to secure a partnership debt; (3) the storage of the property with the defendant as warehousemen, with no title shown in the plaintiffs, provided the jury believed that the property was solely that of the husband, or that the debt in favor of the plaintiff was not the debt of a partnership composed of the husband and wife, the plaintiffs claiming only through a transaction with the wife. The jury could have decided in favor of the plaintiffs upon one theory and only one, namely, that the husband and the wife were partners, and that, without any previous pledge of the property in dispute to the defendants, they, acting through the wife as a partner, sold it to the plaintiffs in payment of their partnership debt. A finding was not demanded for either party, as a matter of law, upon any theory.

3. The following excerpts from the charge of the court were assigned as error upon the ground that they were inapplicable to the issues and prejudicial: (a) "The court instructs you that if the consideration of the sale of the property was outstanding indebtedness of Mr. McClure, that Mrs. McClure couldn't legally sell her cotton to pay her husband's debts. If she sold the cotton to pay her own debt, it would be a valuable consideration and the trade would be good." (b) "If the plaintiff here bought the cotton from Mrs. McClure, and if Mrs. McClure was the owner of the cotton at the time plaintiffs claim to have bought, and if she sold to the plaintiffs, and that was prior to any sale made to the defendants, why the plaintiffs' title would be good, or would be superior to that of the defendants." *Held*, these charges were not adjusted to the issues, and the former was probably prejudicial. For this reason the court erred in overruling the motion for a new trial.

DECIDED APRIL 24, 1924.

Trover; from Cherokee superior court—Judge Blair. November 17, 1923.

*Brooke & Henderson,* for plaintiffs.

*Wood & Vandiviere,* for defendants.

BELL, J. This was an action of trover by E. P. Redd & Company against W. A. Lathem & Sons, for the recovery of five bales of cotton. Each of these firms ran a mercantile store and each had an account against either Henry or Ethel McClure, or against them both jointly. The defendants also ran a warehouse in which the cotton had been stored by the McClures in the fall of 1920. It was contended by the defendants that they received it from the McClures in pledge. It was the contention of the plaintiffs, on the other hand, that the cotton had not been delivered to the de-

fendants in pledge, but merely for keeping, and that the plaintiffs acquired title thereto by a purchase from Ethel McClure, the consideration for which was the settlement of an account which she and her husband owed to the plaintiffs and the surrender of a note which the plaintiffs held against one Dodd, who had worked for Ethel McClure, or for her and her husband, during 1920. The alleged purchase and sale relied on by the plaintiffs occurred on February 25, 1921. A verdict was found in favor of the defendants. The plaintiffs filed a motion for a new trial, which was overruled, and they excepted. In the two special grounds of the motion error is assigned upon the following excerpts from the charge of the court, upon the ground that they were inapplicable to the issues and prejudicial: (*a*) "The court instructs you that if the consideration of the sale of the property was outstanding indebtedness of Mr. McClure, that Mrs. McClure couldn't legally sell her cotton to pay her husband's debts. If she sold the cotton to pay her own debt, it would be a valuable consideration and the trade would be good." (*b*) "If the plaintiff here bought the cotton from Mrs. McClure, and if Mrs. McClure was the owner of the cotton at the time plaintiffs claim to have bought, and if she sold to the plaintiffs in satisfaction of an obligation of her own to the plaintiffs, and that was prior to any sale made to the defendants, why the plaintiffs' title would be good, or would be superior to that of the defendants."

1. We are satisfied that the general grounds of the motion for a new trial are without merit. The evidence was quite sufficient to authorize the verdict found in favor of the defendants. If we could concur in their contention that the verdict as to title was demanded, it would then be unnecessary to pass upon the assignments of error upon the charge, because in that case any errors in the charge would be harmless. We will pass upon that question first.

It is insisted for the defendants that the fact of pledge was established as a matter of law. Marvin and Jack Lathem, members of the defendant firm, each testified that the cotton was pledged by Henry McClure as it was stored, and that his wife on one or more occasions was present and agreeing to the arrangement. It is true that their testimony upon this point was not directly disputed. Neither Henry McClure nor his wife, each

being sworn as a witness for the plaintiffs, could remember whether the cotton had been pledged to the defendants or not. We do not decide that the evidence so given was or was not sufficient to raise an issue as to the truth of the testimony of the Lathems. It appears, though, that notwithstanding the claim of the Lathems that the cotton was to be sold at any time they decided to sell it and that the pledge was certain, they yet, according to some of the evidence, sought a further agreement with the McClures with reference to its disposition, doing so as late as the date of the alleged purchase by the plaintiffs. Marvin Lathem testified that the McClures told him to put it in the warehouse and apply it upon their account at any time they (the defendants) decided to sell it. He testified again, however,—referring to a later transaction, —that he "tried to get both of them to sell this cotton and apply it on account." The father of Ethel McClure testified in behalf of the plaintiffs that Marvin Lathem came to his house about the first of February, 1921, and tried to "buy" the cotton from Ethel, and that she refused to sell it to him; that he "just wanted to buy the cotton," and that this was about three o'clock in the morning. Jack Lathem testified that he tried to get Mrs. McClure to take a bill for the cotton in *July, 1921,* and that she would not accept it; that "it was after the cotton had been sold and applied on account, according to instructions or agreement with Mrs. McClure and Henry, that I presented the cotton bill to Mrs. McClure." But at another point he testified: "We did not sell the cotton until July, 1922; after the trial here [a previous trial of the same case] they told me to go ahead and weigh the cotton up and give them credit for it; that the case was over and it was my cotton." In view of these circumstances it cannot be said that the testimony of the Lathems established, as a matter of law, that the cotton had ever been pledged. "Where a disinterested witness, who is in no way discredited by other evidence or his own, testifies from his own knowledge to a fact which is not in itself improbable or in conflict with other evidence, the witness is to be believed, and the fact testified to is to be accepted as legally established." But "it cannot be said, as a matter of law, that the jury is bound to accept evidence as true, although not contradicted by *direct* evidence" (italics ours). *Whiddon* v. *Hall,* 155 *Ga.* 570 (6), 578 (118 S. E. 347). Compare *Atlantic Coast Line R. Co.* v. *Drake,* 21 *Ga. App.*

81 (4) (94 S. E. 65) ; *Yaryan Rosin & Turpentine Co.* v. *Haskins,* 29 *Ga. App.* 753 (2) (116 S. E. 913) ; *Jones* v. *Teasley,* 25 *Ga. App.* 784 (105 S. E. 46). The credibility of these witnesses was for the jury. There were circumstances which the jury could weigh in determining the weight to be given their testimony.

The defendants make the further contention that the evidence shows that the cotton was produced upon a farm operated by Henry and Ethel McClure, husband and wife, while they lived together, without any agreement by the husband that the wife should have her separate earnings, and that the title to the cotton was therefore in the husband. Hence, they insist that the pledge by Henry McClure was all-sufficient, irrespective of the consent of his wife, and that she, having no title, could not convey any to the plaintiffs, who dealt with her only. The rulings made above, that the credibility of the testimony of the Lathems was under the circumstances a question for the jury, will apply equally to the contention that their evidence conclusively established a pledge by the husband independently of the concurrence of his wife.

Thus we conclude that notwithstanding what may have been the preponderance of the evidence upon the point, a finding was not demanded, as a matter of law, that the cotton had ever been pledged to the defendants as they contended. The power of Ethel McClure to make the sale to the plaintiffs will be discussed in the following division of this opinion.

2. It indisputably appeared that the cotton had been stored with the defendants, whether in pledge or not, and that until demanded by the plaintiffs they had continued in the lawful possession of it. If, therefore, the proof was insufficient to show ownership in the plaintiffs, the verdict found for the defendants still was demanded as a matter of law. "In the absence of any consent or agreement, either expressed or implied, on the part of the husband that the earnings of the wife shall be retained by her as her separate estate, they belong to him." *Georgia Railroad Co.* v. *Tice,* 124 *Ga.* 459 (5) (52 S. E. 916, 4 Ann. Cas. 200) ; *Cotter* v. *Gazaway,* 141 *Ga.* 534 (1) (81 S. E. 879) ; *Mock* v. *Neffler,* 148 *Ga.* 25 (2) (95 S. E. 673) ; *Heyman* v. *Heyman,* 19 *Ga. App.* 634 (1) (92 S. E. 25). It appears that Henry and Ethel McClure were husband and wife, living together upon a farm whereon the cotton was produced; also that the cotton was produced principally,

if not altogether, by her labor together with that of their children and an employee. She seems to have thought the cotton was hers, testifying: "I worked in the field and made this cotton while my husband worked on a truck and made what he could that way. I say the cotton to have been mine because I worked in the field and the children worked in the field and made it." If this were all the evidence upon the question, we should say that the title to the cotton so produced was in the husband, and that the plaintiffs did not acquire title in purchasing from the wife, she not appearing to be the husband's agent. But there was some evidence authorizing the inference that Henry and Ethel McClure were partners. "A married woman may contract to become, and actually become, a member of a partnership with her husband." *Schofield* v. *Jones,* 85 *Ga.* 816 (2) (11 S. E. 1032); *Vizard* v. *Moody,* 119 *Ga.* 918 (2) (47 S. E. 348); *Morrison* v. *Dickey,* 122 *Ga.* 353 (3) (50 S. E. 175, 69 L. R. A. 87); *Butler* v. *Frank,* 7 *Ga. App.* 655 (2) (67 S. E. 884). Marvin Lathem testified: "Henry and Ethel McClure had an account with Lathem & Sons when they brought this cotton there. . . We had furnished Henry and Ethel McClure supplies to make their crop on that year." Both he and Jack Lathem dealt with the McClures as joint owners or as partners. In all the transactions they recognized her as having an interest, as is shown by expressions in the testimony of the one or the other, such as the following: "They began to turn this cotton over to us;" "they put this cotton in there;" "he and his wife both said they would make ten, but it developed that they only made seven" bales; "they were to turn the cotton over to me to go on account;" the cotton was to be placed on the account "when they said . . let it go;" "they told me at the time this cotton was sold to sell it and give them credit for it;" "Ethel and Henry McClure told me, the parties who made the account, they both authorized me," etc.; "they told me to sell the cotton;" "I had a talk with both parties, and Ethel McClure agreed to that;" "all I wanted was for them to bring the balance of the cotton down;" "I asked them to bring it;" "tried to get both of them to sell this cotton;" "the previous arrangement we had about the account was to charge it jointly to them, and that was the account they said they wanted the cotton to apply to;" "they wanted to leave it there to be applied on what they owed."

From this evidence we think the conclusion was warranted that Henry and Ethel McClure were partners. If so, either one of them could have pledged the cotton to the defendants as security for the partnership debt. So also could Ethel McClure sell it to the plaintiffs, if acting within the scope of the partnership business and not violating a previous pledge to the defendants. It was inferable that the account which the plaintiffs held against the McClures was also a partnership debt. But a part of the alleged consideration for this transaction was the surrender of a note which the plaintiffs held against Albert Dodd, whom Ethel McClure had employed for the year 1920 and who had not been paid for his labor. It could yet be inferred from the circumstances that although Ethel McClure employed him, she was acting for the partnership in doing so, and that in obtaining a surrender of his note payable to the plaintiffs as part consideration for the cotton, the partnership retired its indebtedness to him for his services. A partner cannot sell partnership property in payment of his or her individual debt (*Eady* v. *Newton Coal Co.,* 123 *Ga.* 557 (1), 51 S. E. 661, 1 L. R. A. (N. S.) 650, 3 Ann. Cas. 148), but may do so in payment of an existing debt of the firm. Such a sale will pass title to the creditor, though the other partner has no knowledge of the transaction. *Denton* v. *Hannah,* 12 *Ga. App.* 494 (5) (77 S. E. 672). In like manner, a partner may pledge the firm's property to secure the firm's debt. Thus, the jury could have found that Ethel McClure, acting for the partnership, made a valid transfer of the title to the cotton to the plaintiffs, the inference not being demanded that the cotton had previously been pledged by either of the McClures to the defendants. The verdict found for the defendants was, therefore, not absolutely demanded.

There was no evidence at all, however, to show that the cotton was the individual property of Ethel McClure, and the only theory upon which the plaintiffs could claim title was that of a partnership between Henry McClure and his wife, and of a sale by the latter in payment of the partnership obligations. If the title to the property was in the husband, the plaintiffs did not acquire title in dealing with the wife, and could not recover, irrespective of a pledge to the defendants, because the plaintiffs cannot recover without title. The same is true also if the debt to the plaintiff was not a partnership debt, even though the McClures were in

partnership. Again, the plaintiffs ought not to recover if the property was pledged to the defendants either by the husband or the wife as a partner, if they were partners, and if the pledge was made before the transaction in which the plaintiffs claimed to have purchased. Having reached the conclusion that the evidence did not absolutely demand the verdict found for the defendants, we next will examine the excerpts from the charge of the court assigned as error.

3. From what we have stated above, there was no issue in reference to a sale to the plaintiffs by Ethel McClure of *her* property to satisfy *the individual* debt of her husband. The evidence did not warrant a finding that the cotton belonged to her individually, but only that it was that either of her husband or of a partnership composed of herself and her husband; nor was there any proof that any individual debt of her husband was paid by the sale, the only evidence upon the subject being that it was the joint debt of them both, *whether as partners or not*. It follows that the charge complained of in the first ground of the amendment to the motion for a new trial was inapplicable to any issue involved upon the trial. A charge containing a correct statement of an abstract principle of law, but not applicable to the evidence, and tending to mislead the jury and prejudice the rights of one of the litigants, is reversible error. *Nation* v. *Jones, 3 Ga. App.* 83 (3) (59 S. E. 330); *Culberson* v. *Alabama Construction Co., 127 Ga.* 599 (1) (56 S. E. 765, 9 L. R. A. (N. S.) 111, 9 Ann. Cas. 507). An irrelevant charge is not always cause for a new trial. When one has been given and is assigned as error, the court will examine the record to determine if the losing party was in any way prejudiced thereby. If not, the error will be treated as harmless, and a new trial upon that ground will be denied; otherwise where it appears that the inapplicable charge may have tended to the prejudice of the complaining party. In this case it is probable that the jury were confused and misled by the excerpt complained of in this ground of the motion. For this reason a new trial should have been granted.

Having determined that there was no evidence to the effect that the transaction between Ethel McClure and the plaintiffs was a sale of her separate property to satisfy the debt of her husband, the correctness of the proposition insisted upon in the briefs

for plaintiffs in error, that the defendants were not in such privity in estate with Ethel McClure that they might assail her transaction with the plaintiffs upon that ground, is not raised for decision. See *Palmer* v. *Smith,* 88 *Ga.* 84 (1) (13 S. E. 956); *Hawes* v. *Glover,* 126 *Ga.* 305 (5) (55 S. E. 62); *Scaife* v. *Scaife,* 134 *Ga.* 1 (2) (67 S. E. 408).

Unless the excerpt complained of in the second ground of the amendment to the motion for a new trial contained an intimation of a sale or pledge to the defendants, which was issuable under the evidence, we do not think that this charge was erroneous for any reason assigned. We will say, however, that it ought not to have been given, for the reason that there is no evidence that the cotton was the individual property of Mrs. McClure. It was either the property of her husband or that of a partnership of which she was a member. The charge therefore was inapplicable to the issues, but not for that reason prejudicial to the complaining party. It might have been the subject of complaint by the defendants had they not prevailed. If upon another trial the issues be the same, the language of this excerpt should be avoided.

A new trial must be ordered because of the error in giving the excerpt complained of in the first special ground of the motion. Nothing said in the foregoing discussion of the facts should be taken as intimating any opinion by this court as to which party ought to prevail, and should not prejudice either party. A free reference to the evidence has been necessary in order to demonstrate satisfactorily to ourselves, whether also to others, the correctness of the solution we offer of the problems which the case has presented.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*